UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DIONNY REYNOLDS,

        Plaintiff,

v.                                                      Case No. 24-CV-187

ASHLEY HASELEU, *et al.*,

        Defendants.

---

### DECISION AND ORDER

---

Plaintiff Dionny Reynolds, who is incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. Reynolds was allowed to proceed on an Eighth Amendment claim against Ashley Haseleu, Ann York, Gwendolyn Vick, Richard Bartz, Erin Wenger, and Tonya Wesner for allegedly failing to treat his back pain. The defendants filed a motion for summary judgment, which is fully briefed and ready for a decision. (ECF No. 43) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 6, 12.)

### PRELIMINARY MATTERS

The defendants argue that Reynolds failed to follow Federal Rule Civil Procedure 56 and Civil Local Rule 56 when responding to their motion for summary judgment and, as a result, their facts should be deemed uncontested and undisputed. (ECF No. 56 at 1.) District courts are entitled to construe *pro se* submissions leniently and may overlook a plaintiff's noncompliance by construing the limited evidence in a light most favorable

to the plaintiff. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). While Reynolds's response does not formally conform with the rules, his response contains sufficient facts, allowing the court to rule on the defendants' summary judgment motion. Additionally, Reynolds also invokes 28 U.S.C. § 1746 in his complaint, which is enough to convert the complaint into an affidavit for the purposes of summary judgment. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017); *Owens v. Hinsley*, 635 F.3d 950, 954–55 (7th Cir. 2011).

Reynolds also submitted an "Amended Brief in Opposition" (ECF No. 57), which the court will construe as a sur-reply. Whether to grant a party leave to file a sur-reply brief is a question within the court's discretion. "The decision to permit the filing of a surreply is purely discretionary and should generally be allowed only for valid reasons, such as when the movant raises new arguments in a reply brief." *Merax-Camacho v. U.S.*, 417 F. App'x 558, 559 (7th Cir. 2011) (citing *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3 626, 631 n. 2 (7th Cir. 2010)). "In some instances, allowing a filing of a surreply 'vouchsafes the aggrieved party's right to be heard and provides the court with the information necessary to make an informed decision.'" *Univ. Healthsystem Consortium v. United Health Group, Inc.*, 68 F. Supp. 3d 917, 922 (N.D. Ill. 2014) (quoting *In re Sulfuric Acid Antitrust Litg.*, 231 F.R.D. 320, 329 (N.D. Ill. 2005)).

The court will allow Reynolds's sur-reply because it provides more clarity. As such, the court will consider the information contained in Reynolds's submissions where appropriate in deciding defendants' motion.

Finally, Reynolds does not provide evidence and arguments that defendants Haseleu, Wegner, or Wesner were involved in the denial or delay of treating his back during the relevant time period. Section 1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional violation." *Hildebrant v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003) (quoting *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996)). Because §1983 makes public employees liable "for their own misdeeds but not for anyone else's," *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir.2009), a plaintiff must specifically demonstrate what each individual defendant did (or did not do) to violate his constitutional rights. Because Reynolds does not provide evidence demonstrating what Haseleu and Wegner did (or did not do) to violate his constitutional rights, summary judgment is granted in their favor.

As for Wesner, while Reynolds provides evidence of her actions, her care falls outside the scope of this case. Reynolds was allowed to proceed on claims for deliberate indifference between December 29, 2021, and November 30, 2022. All of Reynolds allegations against Wesner occurred in 2023. Reynolds is limited to the scope of the screening order. *See Werner v. Hamblin*, Case No. 12-C-0096, 2013 WL 788076 at *2 (E.D. Wis. March 1, 2013). Summary judgment is granted in Wesner's favor. The remainder of this order will focus on the evidence against York, Vick, Bartz, and Simmons.

3

Case 2:24-cv-00187-WED    Filed 07/01/25    Page 3 of 15    Document 58

# FACTS

The facts are largely undisputed. At all relevant times Reynolds was incarcerated at Waupun Correctional Institution. (ECF No. 45, ¶ 1.) Defendants York and Vick were employed at Waupun as Nurse Clinicians. (*Id.*, ¶¶ 2, 4.) Simmons was employed as an Advanced Practice Nurse Prescriber (APNP) at Dodge Correctional Institution from February 28, 2022, to present, but filled in at Waupun for most of 2022. (*Id.*, ¶ 6.) Bartz is employed as a physical therapist at Waupun and has been since 2013. (*Id.*, ¶ 11.) The defendants also note that for most of 2022 Waupun's HSU had a staffing shortage. (*Id.*, ¶¶ 25-29.) As a result, on average, only one doctor and one APNP were "regularly available."

Reynolds was diagnosed with scoliosis as a child and suffers from chronic back pain as a result. (ECF No. 57 at 3.) On December 30, 2021, York received a Health Services Request (HSR) from Reynolds requesting an appointment for his back pain. (ECF No. 45, ¶ 38.) York responded that she scheduled Reynolds to see a nurse. (*Id.*) On January 19, 2022, non-defendant nurse Whitney Pitzlin visited Reynolds's cell and spoke with him about pain he was experiencing from his mid-spine to his neck. (*Id.*, ¶ 39.) Reynolds told her that his chronic pain had been worsening over the last two months, and that his current pain medication, Amitriptyline, was not working so he wanted to try a different medication. (*Id.*, ¶¶ 40-41.) Pitzlin referred Reynolds to an advanced care provider to discuss his options for pain medication, recommended lidocaine cream, and "encouraged Reynolds to continue using Amitriptyline until he

4

could see a provider." (*Id.*, ¶ 42.) She also instructed him to contact HSU if his symptoms worsened. (*Id.*)

About two weeks later, on February 1, 2022, York received an interview/information request (more informal than an HSU) from Reynolds asking when he was going to see a provider for his back pain. (ECF No. 45, ¶ 44.) York responded that Reynolds was placed on the waiting list, which the defendants assert is appropriate for prisoners with chronic pain issues that do not have symptoms that would "have warranted immediate evaluation." (*Id.*, ¶¶ 43-44.)

On March 1, 2022, non-defendant Nurse Andrea Bleecker received an interview/information request from Reynolds requesting care for his back pain. (ECF No. 45, ¶ 45.) Bleecker responded that he had already been referred to see a provider. (*Id.*)

On March 14, 2022, Vick received an interview/information request from Reynolds wherein he explained that for approximately 10 years he had been taking Amitriptyline (an anti-depressant that can be used to treat chronic pain) and was concerned he was now displaying signs of depression. (ECF No. 45, ¶ 46.) He requested new medication that was not an anti-depressant. (*Id.*) Vick responded that Reynolds had a medical appointment scheduled, although it is unclear when it was scheduled for. (*Id.*)

On March 25, 2022, York received an interview/information request from Reynolds wherein he complained that he had not been seen for his back pain. (ECF No.

5

45, ¶ 47.) York responded that "his medical appointment was scheduled very soon for his pain issues." (*Id.*)

On March 30, 2022, non-defendant Dr. Cheryle Jeanpierre examined Reynolds for complaints of back pain. (ECF No. 45, ¶ 49.) Dr. Jeanpierre recommended new x-rays and an appointment with the pain clinic for steroid injections. (*Id.*)

On April 20, 2022, York received an interview/information request from Reynolds in which he inquired when he would be seen by the pain clinic and receive physical therapy. (ECF No. 45, ¶ 50.) York responded by noting that there were no orders for a pain clinic appointment or physical therapy. (*Id.*) She also informed Reynolds that "the Medical Director was tightening the criteria for specialty appointments." (*Id.*)

On May 3, 2022, Reynolds received an x-ray of his spine and, other than the diagnosis of scoliosis, "the x-ray was insignificant." (ECF No. 45, ¶¶ 51-52.)

On May 30, 2022, York received an interview/information request from Reynolds asking for an appointment to discuss his x-ray results. (ECF No. 45, ¶ 53.) York responded that Reynolds would be seen soon. (*Id.*)

On June 24, 2022, Simmons saw Reynolds to discuss his x-ray results. (ECF No. 45, ¶ 55.) Simmons confirmed Reynolds's scoliosis diagnosis, and Reynolds informed her that he was diagnosed as a child but had never been treated for it. (*Id.*, ¶ 56.) Reynolds described his back pain, noting that it "was aggravated after working in the metal shop due to bending, lifting, and twisting." (*Id.*, ¶¶ 57-58.) He stated that his pain was "a 3 to 5 out of 10 on most days." (*Id.*, ¶ 59.) He noted his pain was chronic and that he was on Amitriptyline, but he believed it was causing him depression. (*Id.*, ¶¶ 61-64.) He also

6

stated that ibuprofen was not working to manage his pain. (*Id.*, ¶ 60.) Simmons discussed alternative pain management strategies with Reynolds, "including strengthening and stretching exercises; weight loss; and ceasing smoking." (*Id.*, ¶ 66.) Simmons asked Reynolds if he'd be willing to try an anticonvulsant medication to manage his pain, and Reynolds agreed. (*Id.*, ¶¶ 67-68.) She also encouraged him to keep taking ibuprofen because long-term use can reduce inflammation. (*Id.*, ¶ 69.) She prescribed him Topiramate, an anticonvulsant. (*Id.*, ¶ 71.)

On July 27, 2022, non-defendant Nurse Jessica Hosfeldt received an interview/information request from Reynolds in which he stated he could not handle the side effects of Topiramate and requested he be allowed to try a different medication. (ECF No. 45, ¶ 73.) Hosfeldt responded that he was on the list to be seen by an advanced care provider. (*Id.*)

On August 3, 2022, Reynolds saw Bartz for his first physical therapy appointment, at which time he told Bartz that "his chief complaint was right medial scapular thoracic pain that started in October 2004." (ECF No. 45, ¶¶ 74-75.) He also stated that medication "had not been helpful" and that the anticonvulsant had caused numbness and tingling in his hands and feet. (*Id.*, ¶¶ 76, 78.) He further described his prison job, which was metal stamping, where he worked five-to-six hours a day, lifting heavy objects. (*Id.*, ¶¶ 80-81.) Bartz instructed Reynolds to "demonstrate good posture to reduce stress to his upper back," and ordered an additional six appointments, the maximum allowed by the DOC. (*Id.*, ¶ 87-89.)

Reynolds saw Bartz again on August 10, 2022, and they went through several different exercises, creating a home exercise plan. (ECF No. 45, ¶¶ 91-93.) Reynolds saw Bartz consistently through the remainder of August 2022 and October 19, 2022, and by the end of the appointments Reynolds "reported no pain at the visit" due to a combination of medication and physical therapy exercises. (*Id.*, ¶¶ 94-105; 119-136.) Over the total of six physical therapy appointments, Bartz adjusted the exercises he taught Reynolds to more specifically address his pain, conducted ultrasounds as a pain reduction tool, and continued to monitor his symptoms. (*Id.*) He also encouraged Reynolds to discuss his pain medication with his healthcare provider. (*Id.*)

On August 10, 2022, Vick received an HSR from Reynolds complaining that the anticonvulsant was making his hands and feet numb. (ECF No. 45, ¶ 95.) Vick scheduled Reynolds to be seen by a provider. (*Id.*) On September 9, 2022, Simmons examined Reynolds, purposely delaying the visit a month to give the Topiramate time to take effect. (*Id.*, ¶¶ 106-107.) Reynolds told Simmons that the numbness began almost immediately after he started taking the medication, and that it did not relieve pain, so he stopped taking it. (*Id.*, ¶¶ 108-109.) Simmons explained that numbness is a common initial side effect and it likely would have gone away after one-to-three months of continuous use of the medication. (*Id.*, ¶ 111.) Reynolds asked for a different medication, and Simmons explained that ibuprofen is the preferred treatment to help with inflammation. (*Id.*, ¶¶ 112-113.) Simmons also switched Reynolds from Topiramate to Oxcarbazepine, a different anticonvulsant, which the defendants state is a common

practice because, even though they are the same class of drugs, the medications have different active ingredients and can work in different ways. (*Id.*, ¶ 114)

On November 10, 2022, Simmons again saw Reynolds for his back pain, at which time Reynolds stated "that his chronic back pain was well controlled with Oxcarbazepine and with physical therapy." (ECF No. 45, ¶¶ 142-143.) Simmons did not see Reynolds again for his back pain. (*Id.*, ¶ 146.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific

facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Reynolds claims that the defendants violated his Eighth Amendment rights when they did not treat his chronic back pain. A prison official violates the Eighth Amendment when he is deliberately indifferent "to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[A] plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

A plaintiff must allege "that an official *actually* knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (emphasis in original). The plaintiff also "must show more than mere evidence of malpractice." *Id*. The plaintiff must show that the prison official's choices "were so 'significant a departure from accepted professional standards or practices' that it is questionable whether they actually exercised professional judgment." *Stallings v. Liping Zhang*, 607 Fed. Appx. 591, 593 (7th Cir. 2015) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). These choices include where a prison official fails to act or do anything to address the serious medical need. *See Gayton*, 593 F.3d at 623-624 (reversing summary judgment in favor of a nurse who refused to examine or treat a vomiting inmate). They also include

10

where an official delays necessary treatment, aggravating a condition or needlessly prolonging a plaintiff's pain. *Gomez v. Randle*, 680 F.3d 859, 865-66 (7th Cir. 2012).

The parties do not dispute that scoliosis and the associated chronic back pain are objectively serious medical conditions.

*Claims against York and Vick*

The undisputed facts demonstrate that York's and Vick's roles in Reynolds's treatments were limited to responding to Reynolds's HSRs and information/interview requests and scheduling him for appointments. Reynolds argues that there were significant delays in scheduling appointments. "A delay in treatment may show deliberate indifference if it exacerbated the inmate's injury or unnecessarily prolonged his pain." *Perez v. Fenoglio*, 792 F.3d 768, 777-778 (7th Cir. 2015.) "Of course, delays are common in the prison setting with limited resources, and whether the length of delay is tolerable depends upon the seriousness of the condition and the ease of providing treatment." *Petties* 836 F.3d at 730.

It is undisputed that Waupun was suffering from a staffing shortage during the relevant time period. York and Vick, in their professional judgment, determined that Reynolds's chronic back pain was not an emergent situation, so they placed him on the waiting list to be seen by an advanced care provider. Reynolds produces no evidence demonstrating that York's and Vick's determinations were a significant departure from professional judgment or that the delay in being seen unnecessarily aggravated his condition or needlessly prolonged his pain. Reynolds needed to demonstrate that he suffered from "serious but *avoidable* pain." *Gabb v. Wexford Health Sources, Inc.*, 945

11

F.3d 1027 (7th Cir. 2019) (emphasis in original, citations omitted). Unfortunately, chronic back pain is a symptom of scoliosis, and Reynolds does not demonstrate that York or Vick did anything to exacerbate his pain. As such, no reasonable factfinder could conclude that they were deliberately indifferent.

Summary judgment is granted in their favor.

*Claim against Bartz*

It is not entirely clear what Reynolds is claiming Bartz did to violate his constitutional rights. The undisputed record shows that Bartz consistently provided physical therapy to Reynolds for the maximum amount of time and, more significantly, the physical therapy (by Reynolds's own admission) worked. By the end of his stint in physical therapy, Reynolds stated he was not experiencing pain. As such, no reasonable factfinder could conclude that Bartz was deliberately indifferent to Reynolds's back pain.

Summary judgment is granted in his favor.

*Claim against Simmons*

Reynolds asserts that Simmons did not appropriately treat his back pain. However, the undisputed record shows that Simmons took several actions to address Reynolds's back pain. When Reynolds stated that Amitriptyline was no longer working, Simmons proposed an alternative pain management plan, including switching to the anticonvulsant Topiramate. When Reynolds reported that the Topiramate was not working, making his hands and feet numb, Simmons switched Reynolds to Oxcarbazepine, which Reynolds reported in November 2022, was working.

12

It seems Reynolds is asserting that Simmons had an obligation to fully remedy his pain. However, the Eighth Amendment does not "impose the unrealistic requirement that doctors keep patients completely pain-free." *Arce v. Wexford Health Sources, Inc.*, 75 F.4th 673, 681 (7th Cir. 2023). Nor do prisoner-patients have the right to demand specific pain medication. *Id.* As long as the health care provider is not "persisting in a course of treatment known to be ineffective," *Machicote v. Roethlisberger*, 969 F.3d 822, 828 (7th Cir. 2020), or providing treatment that is blatantly inappropriate, the provider cannot be found deliberately indifferent in treating the patient's pain. *Arce*, 75 F.4th at 681. Reynolds does not demonstrate that Simmons was persisting in an ineffective course of treatment or providing blatantly inappropriate treatment. As such, no reasonable factfinder could conclude that she was deliberately indifferent tohis' back pain.

Summary judgment is granted in her favor.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is granted. The defendants also argued that they were entitled to qualified immunity but, because the court found in their favor on the merits, it does not need to address the qualified immunity argument. Because there are no remaining claims, the case is dismissed.

# ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 43) is **GRANTED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 1st day of July, 2025.

BY THE COURT

*William E. Duffin*
WILLIAM E. DUFFIN
United States Magistrate Judge